IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONNIE SHROPSHIRE, AIS #175941,    )
    )
    Plaintiff,    )
    )
v.    )    CIVIL ACTION NO. 10-470-CB-N
    )
DEBORAH TONEY, et al.,    )
    )
    Defendants.    )

REPORT AND RECOMMENDATION

This matter is before the court on the defendants' Answer and Special Report (doc. 32)[1], which the court converted (doc. 33) into a Motion for Summary Judgment, as well as plaintiff's Response (doc. 36) and Supplemental Response (doc. 38).  The instant motion was referred to the undersigned pursuant to 28 U.S.C. §636 and Local Rule 72.2(c)(4).  It is the Recommendation of the undersigned that defendants' Motion for Summary Judgment be Granted in part and Denied in part as set forth hereinbelow.  In addition, the undersigned Grants, in part, plaintiff's "Motion for Consideration and to Obtain Information" (doc. 37), which the court deems to be a Motion for Discovery.  Finally, the undersigned DENIES plaintiff's Motion to Amend (doc. 39) which seeks to add an untimely jury demand.

Procedural History

Plaintiff, a prisoner in the custody of the Alabama Department of Corrections, filed this action under 28 U.S.C. §1983 alleging that both defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Fifth, Eighth,

---

[1]  Defendants have incorporated their Answer at the end of the Special Report. *See* doc. 32 at pp. 8-11.

and Fourteenth Amendments to the United States Constitution, and that defendant Chandra Johnson ("Johnson") intentionally struck his injured foot in violation of his right to be free from excessive force.

In addition, plaintiff filed a separate complaint in civil action number 11-304-WS-N, which alleged that, on April 26, 2011, inmates at the institution where he was housed spread muriatic acid on the floor where he was present. That action was consolidated into the current case (doc. 18) on April 23, 2012, prior to plaintiff's amended complaint (doc. 21) or any briefing on the summary judgment motion.  Plaintiff complains in his Amended Complaint (doc. 21) that the use of muriatic acid on prison floors while he was present caused some sort of breathing problem and, without any medical or other factual basis, concludes that the vapor emitted continues to cause headaches and breathing problems.

Defendants filed their Answer and Special Report (doc. 32) on August 3, 2012; the court converted the Special Report to a Motion for Summary Judgment by order (doc. 33) dated August 6, 2012, and provided plaintiff with an opportunity to respond.  Plaintiff has filed a Response (doc. 36), a "Motion for Consideration and to Obtain Information" (doc 37), and a Supplemental Response (doc. 38).  In addition, plaintiff filed a Motion to Amend Complaint (doc. 39) on December 26, 2012, seeking to add a jury demand.

Particularly in light of the evidence offered by plaintiff, it is the opinion of the undersigned that the Special Report does not demonstrate that there exist no genuine issues of fact and that defendants are entitled to entry of judgment.  Furthermore, defendants' discussion of qualified immunity does not adequately support a request for such relief upon the record presented.   Accordingly, the court finds that defendants'

Motion for Summary Judgment is due to be GRANTED in part and DENIED in part as set forth below.

Summary Judgment Standard

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." Id. (*quoting* Celotex Corp. v. Catrett, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." Offshore Aviation v. Transcon Lines, Inc., 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

Facts[2]

Plaintiff alleges, and has testified by affidavit, that while working at the Atmore Community Work Center on July 4, 2010, helping set up for visitation day, his foot was drenched with mop-water containing chemicals used to clean the floors[3] but that he continued to work until he noted a burning sensation in his foot. He has made unsupported allegations concerning the chemicals used, but it appears from the limited evidence presented that the mixture may have contained nothing more than an all-purpose commercial detergent.[4] Plaintiff states that he informed Sgt. Johnson that his foot was burning and painful, but that she told him he would be 'alright' and informed him that she needed him to complete his assigned shift.

_____

[2] In addressing this matter under the standard applicable to motions for summary judgment, the court accepts as true all uncontested facts and, where the facts are contested, accepts the evidence in the light most favorable to the nonmoving plaintiff. Tipton, *supra*. This statement of facts is thus drawn principally from the plaintiff's sworn complaints (docs. 1, 4), plaintiff's affidavits (docs. 14 at 6, and 36 at 6-8), and the medical records (doc. 38).

[3] Defendants state that the floors are usually cleaned on Saturday night, prior to visitation day, rather than on the morning of visitation day.

[4] Defendants dispute plaintiff's claim to have been burned by the chemicals used for floor cleaning. The medical records demonstrate that plaintiff's foot was injured at approximately the time claimed and that he suffered from chemical burns. Doc. 38 at 6-7. Despite defendants' arguments on summary judgment, the possibility that commercial detergent or any other material in that mixture caused the burns to plaintiff's foot is not so inherently far-fetched as to justify discrediting plaintiff's testimony where the chemicals remained in his shoe, in prolonged direct contact with his skin, for a substantial period of time while he continued to perform his prison duties. Defendants' current disbelief of the cause and severity of the injury, however, arguably reinforces plaintiff's claim that defendants did not take his injury seriously in the days that followed.

4

After his shift, plaintiff washed his foot in the restroom; at that time his foot was red, swollen and irritated.  He further states that he filled out a medical sick call form.  He states that he has attached a copy of the form as exhibit A to his affidavit, doc. 36.[5]

Plaintiff further offers affidavit testimony to the following facts in support of his claims:

On July 5, 2010,[6] plaintiff saw Warden Toney and showed her his injured foot; Warden Toney responded that they didn't have anything at the jail to cause that kind of burn and walked away.

On July 6, 2010, plaintiff was called to the dining hall for work duties by Steward Kathy Stonewall.[7]  Plaintiff told Ms. Stonewall that he could not work because of the injury to his foot, and showed her the injuries; she sent him back to the dorm for the day.

Sergeant Johnson was present at that time and heard the discussion.  She took a squeegee from inmate Fletcher and hit plaintiff's foot, breaking open some of the blisters.[8]

_____

[5] No copy of that document was attached to the affidavit, but a request form dated July 5, 2010, was submitted as an exhibit to document 38, at 21.  The form describes his complaint as "my right feet (sic) is num (sic) & swollen.  It's getting bigger."  The form contains a note dated July 8, 2010, that states that plaintiff is "on ward @ FCC."  Another health services request form is also submitted (doc. 38 at 22); dated July 7, 2010, plaintiff states "my right foot is swollen & numb & now its (sic) in pain."

[6] Defendant Toney's affidavit states that she was not at work on July 5, 2010.  To the extent that the exact date may be material, defendant has not offered documentary evidence to support her statement; in the current state of the record, defendant's statement simply creates a dispute of fact.

[7] Defendants claim in their brief that Steward Stonewall did not call plaintiff to the dining hall [and did not do so at the request of Sergeant Johnson]; however, Steward Stonewall's affidavit states that she did call plaintiff to the dining hall.

[8] Defendant Johnson denies the allegations.  Steward Stonewall states that she does not recall seeing Johnson "do any bodily harm to plaintiff."  Doc. 32-4.  Steward English states that she "did not witness the allegation that Correctional Sergeant Chandra Johnson pounded inmate Donne (sic) Shropshire's foot with a squeegee."  Doc. 32-5.

5

On July 7, inmate McGaster, who slept in the bed next to plaintiff's, took plaintiff in a wheelchair to the jail office, at which time plaintiff was taken for medical attention at the Fountain Health Care Unit ("HCU").

Defendants claim that plaintiff's injury was not a 'serious' medical need.  With regard to the nature and severity of the damage to plaintiff's foot, plaintiff states that it had not fully healed at the time he filed this action, it remained numb and there were sores which had not closed, and that he believes that he may have some nerve damage. In the days following the injury, his right foot was painful, swollen, red, and blistered.

Plaintiff was first seen at the HCU on July 7, 2010.  The medical records from the HCU show the following:

July 7 at 8:20 a.m.: right foot described as tight, swollen, erythematous, oozing crack, crater between third and fourth toes.  Thereafter, another entry at 9:50 a.m. says that plaintiff was seen by Dr. Lopez and a nurse practitioner, and admitted to the ward. The diagnosis at that time was cellulitis, and there was prurulent drainage from between the third and fourth toes.[9]

July 14: plaintiff's foot injury is described as "green drainage, foul odor from Rt Foot" during dressing change.  Plaintiff reported that his foot did not hurt as badly, but the notes still describe drainage.  The wound is described as a chemical burn, though that may have been based on oral history.  Medical personnel made a further note that, within 1-2 weeks they should be able to tell the extent of the damage; in 3-4 weeks, they should know if skin grafts would be required; and that in 2-4 days they should know whether the current antibiotic was adequate.

---

[9] Notes under the 7/7 and 7/14 entries reference the "Admit orders." The court has not located such documents in the

July 15:  this entry is largely indecipherable on the copy in the court's file, but contains another mention that plaintiff's injury was a chemical burn, that it was infected, and that it contained granular tissue.  Further records show continued treatment including medication and debridement of dead tissue.  The last record submitted by plaintiff is dated April 25, 2011.

With regard to plaintiff's claim concerning breathing problems resulting from use of muriatic acid in his presence, even presuming his scant factual claims to be accurate, plaintiff neither alleges nor offers evidence in response to summary judgment of any action by defendants which supports a finding of fault greater than negligence, at most. The medical reports from April 25 or 26, 2011, show that plaintiff lost his glasses and complained that the lack of glasses caused headaches.  There is no indication of breathing problems, or claim that he was exposed to toxic vapors, and no other medical records showing any treatment for any alleged injuries.

Defendants' Evidence

Defendants' Special Report includes affidavits from Correctional Sergeant Chandra Johnson, Warden Deborah Toney, and Stewards Kathy Stonewall and Kathy English, as well as copies of plaintiff's records from Correctional Medical Services and an inmate details form for the plaintiff.

The affidavit of Steward Stonewall states that she called plaintiff to the kitchen on July 6, 2010, that he stated that he was unable to perform his duties due to a foot injury, that she looked at his injury and that she thereupon instructed him to return to his dorm for the day.  She denies knowledge to support plaintiff's allegation that Sergeant Johnson

hit plaintiff's foot.  The affidavit of Steward English simply denies knowledge of plaintiff's allegation that Sergeant Johnson hit plaintiff on the foot.

The affidavits of Sergeant Johnson and Warden Toney reiterate certain factual allegations made by plaintiff, and state simply that these allegations are untrue.  Doc. 32-1, -2.  Sergeant Johnson contradicts plaintiff's claim that inmates were cleaning the kitchen floors on Sunday, July 4, 2010, on the basis that the floors are usually cleaned on Saturday night.  She also contradicts plaintiff's claim that he told her that he needed medical care; that plaintiff was called to the kitchen by herself or Steward Stonewall; and that she hit his foot with a squeegee or had any physical contact with him.  Sergeant Johnson then states that plaintiff never complained about the alleged assault to "I&I"[10], Warden Toney or Captain Myers. Sergeant Johnson's affidavit also disputes plaintiff's claim, made in a separate action and consolidated with this case, that he suffered breathing problems from fumes from floor cleaning in April 2011. Warden Toney also disputes this claim. Sergeant Johnson then states "[a]pparently, inmate Shropshire is fabricating in attempt (sic) to receive monetary gain for something that did not occur." The affidavit contains no other factual assertions.

Warden Toney's affidavit similarly contains recitations of certain of plaintiff's factual claims, and defendant's statements to the contrary.  She contradicts plaintiff's claim that the floor was cleaned on July 4, 2010, and that it was cleaned with muriatic acid[11].  She denies that she was at work on July 5, 2010, when plaintiff claims he talked to her; she states that plaintiff and she have never discussed his foot, and that she ensures

---

[10]  Though not identified, it appears that this refers to an administrative department which investigates complaints against jail officials.
[11]  In the separate suit, plaintiff alleged that use of muriatic acid and other chemicals on April 25, 2011, caused him some breathing problems.

that all inmates that need medical care are seen by medical staff.  She also states that plaintiff did not complain to her about Sgt. Johnson hitting his foot, that he did not report it to the Investigations division, and that no investigation of the assault was conducted.  She then states "[t]he fact that inmate Shropshire is filing a complaint for something that he alleges happened in 2010; (sic) and this is 2012 proves that he is making untrue statements."

 Defendants provide plaintiff's records from Correctional Medical Services going back to July 14, 2010, but do not include records from the period of the injury or first treatments.  Defendants also submit health care request forms going back to July 5, 2010, as well as plaintiff's medication logs.

The defendants' Special Report simply establishes that they dispute certain facts claimed by plaintiff; many of these disputes involve peripheral allegations of little direct relevance to plaintiff's claims.  Defendants do not argue or demonstrate that plaintiff has failed to allege any necessary fact, and a review of the record shows that plaintiff offered evidence to support his central allegations, including causation,[12] the seriousness of his medical condition, the making of requests for medical care, a delay of three days in providing him with medical care, and the fact that his foot was infected by the time he received care.  Plaintiff has established a genuine issue of material fact which will prevent summary judgment on his failure to provide medical care claim.

In addition, plaintiff has offered his own testimony as evidence that Sgt. Johnson struck his injured foot with a squeegee, with notice of his prior injury and without any

---

[12] Plaintiff's claim is for failure to provide medical care.  Defendants primarily challenge how his injury was caused, which is of minimal relevance to his claim.  An inmate's serious burn, from whatever source, is entitled to medical care.

penological justification whatsoever, that the action broke open several blisters, and that it caused plaintiff pain. Plaintiff states that he reported the incident and his injury to Warden Toney. It appears to the court that these allegations set forth a basic claim of excessive use of force, and plaintiff's evidence is sufficient to avoid summary judgment on the merits of these claims.[13]

With regard to plaintiff's claim, originally brought in a separate action, that defendants Sergeant Johnson and Warden Toney are liable for using muriatic acid where he was present, defendants are entitled to summary judgment. In response to summary judgment, plaintiff has failed to offer evidence to support this claim. Reviewing the plaintiff's pleadings on this claim, plaintiff has not alleged or offered evidence of his injury or of any basis for finding that defendants did anything unconstitutional. At most, if all of plaintiff's allegations are to be believed, plaintiff may be deemed to have alleged negligence, but negligence is not an adequate basis for §1983 liability for deliberate indifference. *See e.g.* Cagle v. Sutherland, 334 F.3d 980, 987 (11th Cir. 2003) (holding that § 1983 deliberate indifference claim requires a showing of improper conduct that is more than mere negligence). Further, even if plaintiff had stated some claim for relief,

---

[13]   Though plaintiff has used language that might be deemed to raise claims related to the choice of the specific chemicals used or for the act of sweeping water on his feet, the court does not read his allegations so broadly. To the extent, if any, that plaintiff sought to state a claim for the negligence of any person in sweeping the mixture onto his feet, he has not offered evidence to support such a claim: the sweepers were inmates; there is no allegation that any of the defendants directed anyone to attempt to douse plaintiff with the water or was even aware of his presence before the incident—indeed, it appears from plaintiff's recitation that plaintiff simply walked up at the wrong moment. Nor has plaintiff evidence of what chemicals were used or that the chemicals used were so intrinsically and obviously hazardous that their mere use establishes a constitutional claim. Whether because plaintiff did not intend to bring such claims or because they would be frivolous and subject to summary judgment, no such claims will be tried in this action.

defendants would be entitled to summary judgment as it does not appear that legal

precedent would have placed a reasonable officer or Warden on notice that use of such

chemicals in a prison facility constitutes a violation of any Constitutional right.[14]

<u>Immunity</u>

The Special Report and Answer (doc. 32) raises issues of qualified immunity and

state-law immunities in general terms, with citation to case law generally describing the

immunities.  The only discussion of those principles in relation to the facts of this case

are found at page 5 of the Special Report.

> Defendants are entitled to qualified immunity for two reasons [footnote
> omitted]: One, Shropshire has, as a matter of law, failed to state a
> constitutional claim against them.  (The undisputed facts show no serious
> medical need and no deliberate indifference.)  Two, the undisputed facts
> do not show that Defendants in this context, have violated a clearly
> established right to medical care: even if Shropshire was injured in
> performing his assigned duties (which is doubtful), the Defendants were
> certainly not deliberately indifferent to a substantial risk of harm (ie. mop
> water), and, nonetheless, Shropshire received adequate (most likely
> superior) medical care for any condition he had, whatever the cause.  In
> other words, no case law or legal principle has clearly established that a
> correctional official's only objectively reasonable response would be to
> forswear all moping (sic) due to excessive risk and then to disavow and
> overrule the judgment[15] of professional medical/mental health providers
> whom he/she knows has (sic) been seeing and treating the inmate.

---

[14] If, despite the language of plaintiff's complaint, plaintiff now requests that this claim
be considered as challenging conditions of his confinement, defendants would be entitled
to raise his failure to exhaust administrative remedies.  Plaintiff has not demonstrated that
he filed a grievance and thus exhausted his administrative remedies on such a claim.

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any
> jail, prison, or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. § 1997(e)a.

[15]  It is not clear from the record presented that medical personnel were primarily
or solely responsible for deciding to delay treatment of a burn from July 4 or 5 to July 7.
The court has not been shown that inmate medical care requests to go immediately to
medical care personnel rather than through prison employees.

Doc. 32 at 5.

This recitation is based on an unsupportable view of the evidence: taken in the light most favorable to the plaintiff, the evidence in the record does indeed support a finding of a serious medical need and a delay of three days in providing treatment for that condition.  Further, defendants' recitation misses the point of qualified immunity: plaintiff is not required, under the facts presented, to show binding precedent for the straw man principal set forth in the Special Report.  As noted above, plaintiff has set forth facts which state a straightforward claim for both failure to provide medical care and excessive use of force claims.  If precedent is somehow inadequate to put a reasonable corrections official on notice that a three-day delay is improper in providing treatment for an inmate's burns from whatever source, that lack of notice has not been shown at this stage.  In addition, defendants do not address qualified immunity in connection with the plaintiff's excessive force claim; indeed, they do not challenge it at all, other than to claim that the incident did not occur.

Defendants' arguments do very little more than mention the immunity defenses, in much the same generic way defendants' Answer does later in the same document. The Special Report did not provide the court with sufficient factual or legal basis to hold that they are entitled to qualified immunity; they have not made any argument for immunity based on the plaintiff's version of the facts, rather relying solely on their own contradictions of plaintiff's sworn allegations and affidavit testimony.  As was held in Gardner v. City of Camilla, Ga., 186 Fed.Apps. 860. 863-64 (11th Cir. 2006), "[a]lthough this might appear to raise a legal argument as to the core qualified immunity issue of whether [defendant's] alleged conduct violated a clearly established constitutional right,

it is essentially only an evidence sufficiency issue in the guise of a question of law."
Defendants are not entitled to summary judgment on the basis of this affirmative defense.

Motion for Consideration and to Obtain Information

Plaintiff's Motion seeks additional evidence; due to weaknesses in drafting, plaintiff's motion does not satisfy the requirements of a Motion pursuant to Rule 56(d), seeking further discovery prior to responding to a motion for summary judgment. Plaintiff notes that he has been unable to obtain affidavits from certain witnesses he believes have relevant information: Inmate J.L. McGaskin, Inmate Jerome Fletcher, and officer A.L. Ingram.

Contrary to his assertion in this motion, plaintiff has presented an affidavit from Mr. McGaskin setting forth his testimony on the matters which plaintiff identifies as within his knowledge.  However, inmate Fletcher was allegedly present at the time of the assault on plaintiff; plaintiff claims Sgt. Johnson took the squeegee from Fletcher and then struck plaintiff's foot with it.  Plaintiff claims that Officer Ingram was involved in taking plaintiff to the HCU when inmate McGaskin took plaintiff to the office.

Their testimony, though not absolutely necessary to a summary judgment analysis because plaintiff has offered his own testimony on those facts, is nonetheless discoverable and should have been produced and included in defendants' Special Report.[16]  Defendants' counsel shall seek to obtain affidavits from Fletcher and Ingram and shall submit such statements in a supplement to the special report.

---

[16] The court ordered (doc. 13) defendants to file a Special Report "containing, where applicable, the sworn statements of all persons having knowledge of the subject matter of the complaint."

<u>Motion to Amend</u>

Plaintiff has filed a Motion to Amend (doc. 39) in which he seeks leave to add a jury demand. Rule 38(b), Federal Rules of Civil Procedure, provides:

> On any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d).

Rule 38(d) provides that " a party waives a jury trial unless its demand is properly served and filed."  Neither the original nor any subsequent amended complaint filed in this action has included a jury demand.

The action was originally filed on August 30, 2010; plaintiff filed the Motion to Amend on December 26, 2012, over two years after the case was commenced.  No new claims have been added which would extend the time for making a jury demand on those claims, *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993), or otherwise make timely the current effort to turn this non-jury case into one to be tried to a jury.

Plaintiff's Response does not provide any fact or authority which would allow plaintiff to make a jury demand over two years after the case was filed.  The undersigned finds that plaintiff has waived his right to a jury, and that the Motion to Amend is thus futile.  Plaintiff is not entitled to add a demand for a jury at this late date.

<u>Conclusion</u>

For the foregoing reasons, it is hereby RECOMMENDED that defendant's Motion for Summary Judgment be **DENIED in part** as to plaintiff's claims of deliberate indifference to serious medical needs and excessive use of force, and **GRANTED in part**

14

as to the claims concerning plaintiff's exposure to acid vapors, which was raised by plaintiff in civil action no. 11-304, and consolidated into this action.

In addition, it is hereby RECOMMENDED that plaintiff's Motion for Discovery (doc. 37) is due to be **GRANTED in part** to require defendants to supplement the Special Report with the witness statements identified hereinabove, and that plaintiff's Motion to Amend (doc. 39) to add a jury demand is **DENIED** as untimely.

*See* **Magistrate Judge's Explanation of Procedural Rights, attached, for important information on how to proceed.**

DONE this the 20th day of February, 2013.

/s/ Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within **fourteen (14) days** of the date of service of this document, file specific written

objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C.§ 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten [now fourteen] days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

(Emphasis added)  A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. §1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.