# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DONNIE SHROPSHIRE,                   )
AIS #175941,                         )
    Plaintiff,   )
                                )
v.                                   )    Civil Action No. 10-00470-CB-N
                                )
DEBORAH TONEY and CHANDRA            )
JOHNSON,                             )
    Defendants.  )

## REPORT AND RECOMMENDATION

Plaintiff Donnie Shropshire ("Shropshire"), an Alabama prisoner proceeding *in forma pauperis* (*see* Doc. 6), has brought this action asserting claims against the Defendants under 42 U.S.C. § 1983. Currently pending is the Defendants' second Motion for Summary Judgment under Federal Rule of Civil Procedure 56 (Doc. 83), filed August 15, 2014, which is accompanied by evidentiary materials (Docs. 83-1 – 83-8) and a brief in support (Doc. 84). Shropshire has filed a response in opposition (Doc. 88) to the motion, and the Defendants have filed a reply to the response (Doc. 89), as well as a motion for oral argument (Doc. 91).[1] The motion for summary judgment is now under submission and ripe for adjudication. (*See* Doc. 87).

This matter has been referred to the undersigned United States Magistrate Judge for entry of a report and recommendation pursuant to 28

---

[1] Shropshire initiated this action *pro se* but was appointed counsel prior to the filing of the present motion for summary judgment. (*See* Doc. 53).

U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1), and SD ALA Local Rule 72.2(c)(4). Upon consideration, and for the reasons stated herein, it is **RECOMMENDED** that the Defendants' motion for summary judgment (Doc. 83) be **GRANTED in part** and **DENIED in part**, as set out, and that the Defendants' motion for oral argument (Doc. 91) be **DENIED**.

## I. Procedural History

Shropshire initiated this action on August 24, 2010, by filing a *pro se* complaint with this Court.[2] (Doc. 1). On April 23, 2012, this action was consolidated with a second, later-filed action of Shropshire's (SD ALA Case No. 1:13-cv-00304-WS-N), and Shropshire was ordered "to file an amended complaint that contain [sic] all of his claims on this Court's § 1983 complaint form." (Doc. 18). Shropshire was expressly told: "This amended complaint will supersede all of his prior complaints, amended complaints, and other documents containing allegations…Thus, [Shropshire] shall not rely on his prior pleadings."[3] (*Id.*). Shropshire timely filed an amended complaint (Doc. 21) as

---

[2] The complaint is dated "8/24/10," and the prisoner "mailbox" rule applies to filings in § 1983 actions. *See Lewis v. Barnick*, 385 F. App'x 930, 931 (11th Cir. 2010) (*per curiam*) ("When a *pro se* prisoner files a complaint under § 1983, 'the date of filing shall be that of delivery to prison officials … for the purpose of ascertaining timeliness.' *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir.1993) (emphasis omitted).").

[3] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' " *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted)). *See also, e.g., Fritz v. Standard Sec. Life Ins. Co. of New York*, 676

directed, said complaint being the operative pleading in this action.[4]   The operative complaint alleges the following claims:

1. From July 4 to July 7, 2010, Defendants, Deborah Toney ("Toney") and Cassandra Johnson ("Johnson") were negligent and deliberately indifferent to Shropshire's medical needs by refusing to provide treatment for Shropshire's painfully swollen foot.   Defendant Johnson is also alleged to have used unconstitutionally excessive force by purposefully hitting Shropshire's swollen foot on July 6, 2010, causing further injury.

2. On April 26, 2010, Defendant Toney allegedly ordered Defendant Johnson and others to use muriatic acid to clean the inmate living areas and bathrooms.   The acid is alleged to have reacted with other chemicals to form a toxic vapor that Shropshire and others breathed, causing Shropshire to suffer headaches and breathing problems.

The Defendants filed a special report (Doc. 32) in response to the operative complaint, which the undersigned converted into the Defendants' first motion for summary judgment (*see* Doc. 33).   On March 18, 2013, the Court granted the Defendants' first motion for summary judgment as to Shropshire's "claims concerning exposure to acid vapors as raised in civil action no. 11-304" and denied the motion as to all other claims.   (Doc. 44).   Counsel was appointed to

---

F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

[4] Shropshire subsequently moved to amend his operative complaint to add a jury demand. (*See* Doc. 39).   That motion was denied.   (*See* Doc. 44).

represent Shropshire in this action on August 29, 2013. (Doc. 53). Following a planning conference pursuant to Federal Rule of Civil Procedure 26(f), the parties filed a planning report with the Court, and a scheduling order under Federal Rule of Civil Procedure 16(b) (Doc. 58) was entered, with the initial scheduling order being subject to several amendments (Docs. 59, 64, 67, 74, 78, 80). Discovery has closed in this action (*see* Doc. 67 at 2, ¶ 3), and the Defendants' present motion for summary judgment was timely filed by the cut-off date for dispositive motions (*see* Doc. 80).

## II.    Summary Judgment Standards

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L .Ed. 2d 265 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress*

& *Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Jackson v.*

*BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) further provides:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *See*

5

*Stabler v. Fla. Van Lines, Inc.*, Civil Action No. 11–0103–WS–N, 2012 WL 32660, at *5 (S.D. Ala. Jan.6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when "a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. CA 09–745–C, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011). " 'An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.' " *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted)).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers…" *E.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and quotations omitted). Nevertheless, "a court may not 'serve as de facto counsel for a party' or 'rewrite an otherwise deficient pleading in order to sustain an action.' " *Muhammad v. Bethel*, 430 F. App'x 750, 752 (11th Cir. 2011) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds*, *see Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)). Additionally, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (*en banc*) (internal citation omitted). *Accord, e.g.*, *Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). *See also Sharpe v. Global Sec. Int'l*, 766 F. Supp. 2d 1272, 1282 (S.D. Ala. 2011) (Steele, C.J.) ("[T]he Court . . . will not independently examine uncited portions of the record in search of support for a particular proposition[ on summary judgment]." (citing cases)); Fed. R. Civ. P. 56(c)(3) (On summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record.").

### III.  Determination of Facts[5]

Shropshire is, and at all times relevant to this action has been, an inmate with the Alabama Department of Corrections.  During the events giving rise to this action, Shropshire was housed at the department's Atmore Work Release Center.  At all relevant times, Defendant Toney was the warden of the facility, while Defendant Johnson was a correctional officer with the rank of sergeant.

### *Sunday, July 4, 2010*

July 4, 2010, was a visitation day at the center.  (Doc. 83-1 at 8 [Shropshire Depo., pp. 65-66]).  At about 7:00 a.m. that day – an hour before visitation was to begin – Shropshire, who served as a runner for Johnson, was carrying the computer used for visitation verification into the dining hall so he could set it up.  (*Id.* at 9-10 [pp. 69-73]).  As Shropshire approached the dining room door carrying the computer, another inmate opened the door and accidentally splashed some excess water from the dining hall floor onto Shropshire's right foot, drenching it below the cuff.  (*Id.* at 11-12 [pp. 77-79, 83]).

Shropshire was in uniform and wearing white cloth tennis shoes when his foot got drenched.  (*Id.* at 11 [pp. 77-79]).  At the time, Shropshire did not realize

---

[5] The undersigned has made her determination of facts by "review[ing] the record, and all its inferences, in the light most favorable to [Shropshire,] the nonmoving party."  *E.g., Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).  As such, this determination of "facts" is for summary judgment purposes only and may differ from the facts ultimately established at trial.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("As we said in *Swint v. City of Wadley,* 5 F.3d 1435, 1439 (11th Cir. 1993), 'what we state as "facts" in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts. They are, however, the facts for present purposes, and we set them out below.' "), *opinion modified on other grounds on reh'g*, 30 F.3d 1347 (11th Cir. 1994).

that his foot getting wet would lead to a problem or that there was any concern over a chemical being in the water.  (*See id.* at 13 [p. 85] ("I didn't think it would do what it did, because it was just wet at the time…I didn't know it was a chemical in the water.")).  Shropshire now knows that muriatic acid was in the mop water.[6]  (*Id.* [p. 88]).

Shropshire asked Johnson for permission to go change his shoes and "have it checked out, what had happened." (*Id.* at 13 [pp. 85-86]).  Johnson denied this request, saying, "Well, Shropshire,…I need you."  (*Id.* [p. 86]).  Shropshire then took off his wet shoe, took off the wet sock underneath, and put the wet shoe back on, as inmates were not allowed to walk around barefoot.  (*Id.* [pp. 85-86]).  Later that day, Shropshire told Johnson about the incident resulting in his wet foot and reported that he felt a "burning sensation" and that his foot felt "irritated."  (*Id.* at 14 [p. 121]).  Johnson responded: "Well, what is I'm going to do, you know.  You my runner…You might just be all right…" (*Id.*).  Neither Johnson nor Shropshire was aware what, if anything, was in the water that had wet Shropshire's foot.  (*Id.* [pp. 121-22]).  After visitation ended at 2:00 p.m. that day, Shropshire took a shower and "looked real good at [his] feet." (*Id.* at 15 [pp. 125-26]).  Shropshire saw that his right foot had "started to turn red"

---

[6] The Defendants dismiss Shropshire's testimony regarding muriatic acid being in the mop water as "hindsight" and "speculation" and argue that "[t]here is no competent evidence that muriatic acid was used in the water or on the floor on July 4 or the night before." (Doc. 83 at 3 & n.3).  While Shropshire does not explain how or when he came to know of muriatic acid being in the mop water, the Defendants have cited to no testimony indicating that this was merely a guess or "speculation" by Shropshire.

and was "itchy," and the "burning sensation was still burning." The redness continued for the rest of the day, with Shropshire also noticing the foot begin to swell up. (*Id.* at 15-16 [pp. 125-26, 129-30]). However, Shropshire did not report the problems with his foot to any other prison official for the rest of the day. (*Id.* at 16 [pp. 129-31]).

### Monday, July 5, 2010

The next day, Shropshire met Warden Toney in the breezeway as she reported for work. Shropshire asked to speak with her, and Toney responded: "[Y]es…What is it, Shropshire?" (*Id.* [pp. 131-32]). Shropshire told Toney about his foot getting wet the day before and showed her his injured foot, which was "sweating" and "swollen," the "toes w[ere] big, and the blister thing was getting ready to develop" but "hadn't come on yet." (*Id.* at 16-17 [pp. 132-33]; Doc. 88-1 at 42 [Shropshire Depo., p. 253]). Shropshire told Toney: "I don't know, you know, what – what was in that water. I don't know…Well, just look at it." (Doc. 83-1 at 17 [Shropshire Depo., p. 133]). Shropshire told Toney that he was in pain. (Doc. 88-1 at 41 [Shropshire Depo., p. 252]). Toney looked down at Shropshire's feet, said, "I don't have nothing here that will cause that type of problem[,]" and "went on about her business." (Doc. 83-1 at 17 [Shropshire Depo., p. 133]). By this time Shropshire was wearing a "shower slide" because he could not wear a shoe on his swollen foot. (*Id.*). Shropshire showed Toney his foot because he "wanted her to give [him] some medical." (Doc. 88-1 at 44 [Shropshire Depo., p. 255]).

At Shropshire's deposition, the following exchange took place between Shropshire and his counsel:

Q:     Had you told anyone personally that you wanted - - what was your purpose of speaking to Ms. Toney?

A:     To show her my foot, what had happened.

Q:     What did you want from her?

A:     Well, I wanted her to give me some medical.

Q:     Okay.  And did - - and did she - -

A:     She didn't.

Q:     - - get you any medical treatment?

A:     No, she did not…

Q:     Okay.  Did you request medical treatment from her?

A:     Yes.

Q:     On the 5th?

A:     Well, by me - - after that happened, I went and filled out a - -

Q:     I mean to her personally?

A:     Well, yes, she was standing there personally.  Yes.

…

Q:     …Did you express that to them?

A:     Well, they should have known.  They over me.

Q:     No.  Did you express that to them that you needed - -

A:     Yes.  They over me.

(*Id.* at 44-45, 47 [pp. 255-56, 261]).  Reading this exchange as a whole, it is at best unclear whether Shropshire actually requested medical aid from Toney, he simply assumed she would know he wanted medical aid, or he is claiming the Defendants should have known of his need for medical attention due to their positions of authority.

Soon after speaking with Toney, Shropshire filled out and submitted a "sick call slip"/health services request form.  (Doc. 83-1 at 18-19 [Shropshire Depo., pp. 140, 142-44]; Doc. 83-3 at 30).  The request form stated that Shropshire's "right feet [sic] is num [sic] + swollen" and "it's getting bigger." (Doc. 83-3 at 30).  Shropshire did not report his injury to any other staff member on July 5.  Another inmate, J.C. McGaster ("McGaster"), saw Shropshire's swollen foot on July 5.  McGaster "could tell [the foot] was infected…from previous being a wound care technician" because "it was swollen" and "pus" was present.  (Doc. 88-5 at 6-7 [McGaster Depo., pp. 24-25]).  McGaster told Shropshire "he needed to get to the health care and try to get something did[,]" but McGaster "didn't follow up on it" that day.  (*Id.* at 8 [p. 26]).

### *Tuesday, July 6, 2010*

At about 8:30 or 9:00 a.m. on July 6, the kitchen steward, Kathy Stonewall ("Stonewall"), called Shropshire over the intercom to come to the kitchen to do some cleaning.  (Doc. 83-1 at 20 [Shropshire Depo., p. 147]).  When Shropshire arrived in the kitchen, Stonewall was there with Johnson and another kitchen Stewart.  (*Id.* [pp. 147-48]).  Shropshire told Stonewall that he could not perform

cleaning duties for her that day because of his foot. (*Id.* [p. 148]). Stonewall looked at Shropshire's foot and asked him what had happened to it. (*Id.*). To Stonewall, Shropshire's foot looked "awful," as "it had blisters and it looked like the blisters had popped," "it was nasty, it was real nasty[,]" and it was "swollen" and "pussy" "on the top of his whole foot[,]" though she did not notice a lot of puss. (Doc. 88-4 at 4-5 [Stonewall Depo., pp. 18-19]). Shropshire told her how it had gotten splashed with water, that it was in pain, and that he couldn't perform cleaning duties; Stonewall told him to go back to his dorm and lie down. (Doc. 83-1 at 20-21 [Shropshire Depo., pp. 148-49]; Doc. 88-1 at 41-42 [Shropshire Depo., pp. 252-53]). At this time, Shropshire's feet were still swollen and had developed blisters, and Shropshire was having difficulty walking. (Doc. 83-1 at 21 [Shropshire Depo., pp. 149-50]). Shropshire was wearing shower slides on both feet. (*Id.* [p. 149]).[7]

Johnson was standing nearby and appeared to be listening to Shropshire and Stonewall. (*Id.* [pp. 150-52]). After Stonewall told Shropshire to go lie back down, she turned to go into her office in the kitchen. (*Id.* [pp. 151-52]). At this time, Johnson grabbed a squeegee from a nearby inmate who was cleaning and "bammed"/"whacked" Shropshire on his swollen right foot. (*Id.* at 21-22 [pp. 152-53]). Johnson hit the part of the foot that had blistered, causing the blisters to burst. (*Id.* at 22 [pp. 153-54]). Johnson did not say anything to Shropshire

---

[7] Stonewall testified that Shropshire was wearing socks that day but took the sock off his injured foot to show her. (Doc. 88-4 at 4 [p. 18]).

before or after hitting his foot. (*Id.* [p. 156]). Shropshire was in pain from the blow to his foot and left the kitchen without saying anything to Johnson. (*Id.* at 22-23 [pp. 156-57]). Shropshire did not directly tell Johnson on July 6 that his foot was in pain. (Doc. 88-1 at 41 [Shropshire Depo., p. 252]). Shropshire thinks he submitted another health services request form on July 6 (Doc. 83-1 at 24-25 [Shropshire Depo, pp. 164, 167]), though such a form has not been found in Shropshire's prison medical records. Shropshire then stayed in bed for the rest of July 6 and did not tell any other prison official about his injuries. (*Id.* at 25 [pp. 167-68]).

### *Wednesday, July 7, 2010*

On July 7, Shropshire submitted another health services request, this one stating: "My right foot is swollen + numb + now its in pain." (Doc. 83-3 at 31). By the afternoon of July 7, blood and pus had begun running through the sock on Shropshire's injured foot. (Doc. 83-1 at 25-26 [pp. 168-69]). McGaster retrieved a wheelchair from the shift office, had Shropshire get into it, and took him to the shift office. (*Id.* at 26 [pp. 169-70]). Johnson was in the shift office at this time. (*Id.* [p. 170]). McGaster knocked on the glass part of the door into the shift office, told Johnson that Shropshire was not going to lay around him anymore in his condition, and left. (*Id.* [pp. 170-71]). At Johnson's direction, another officer took Shropshire to another prison facility, Fountain Correctional, for medical attention. (*Id.* [p. 171]).

Dr. Oscar Lopez, the physician who treated Shropshire's foot, recalls that "[h]e had some redness on the mid fore foot and mid foot of the right" and "some in between the toes." (Doc. 83-2 at 14 [Dr. Lopez Depo., p. 20]). Dr. Lopez testified that Shropshire's injury was "consistent with a chemical burn." (*Id.*). Dr. Lopez also determined that Shropshire had developed a staph infection in the swollen foot, which is contracted through breaks in the skin and "can get serious if not treated properly[,]" including death and loss of the foot. (*Id.* at 14-15 [pp. 20-21]; Doc. 88-2 at 6 [Dr. Lopez Depo., p. 22]). According to Dr. Lopez, delay in treating a chemical burn could cause complications – the burn would worsen and the chemical could go deeper into the skin and cause further damage. (Doc. 83-2 at 16 [p. 24]).

According to Dr. Lopez, inmates can request medical care by filling out a medical care request slip. (*Id.* at 21 [p. 52]). Also, a nurse comes to Atmore Work Release every day to perform sick call and then refer matters to nurse practitioners to look at the problem. (*Id.* at 22 [p. 53]. *See also* Doc. 83-4 at 14 [Nurse Gaston Depo., p. 30] ("Now there's a nurse there every day who does sick call and pill call.")). These nurses also review the medical request slips that the inmates put in a little wooden box. (*Id.*). ADOC staff will "occasionally" but "rarely" ask a nurse to see someone specifically, but they play no role in receiving or assessing sick call slips. (Doc. 83-4 at 15 [Nurse Gaston Depo., p. 31]).

The Defendants "deny that Shropshire ever showed them his foot or asked for medical attention[,]" and "Johnson denies she ever struck his foot with a squeegee." (Doc. 83 at 9 (citing Docs. 83-5 [Toney Depo.] and 83-6 [Johnson Depo]). However, both aver that, even had Shropshire shown them his foot, they would not have thought at the time that it was a serious medical condition requiring prompt attention. (*See* Doc. 83-7 at 2 [Toney Aff.]; Doc. 83-8 at 2 [Johnson Decl.[8]]). Both state that they have no formal medical training and but that they have experience with walking around in wet shoes causing feet to swell, redden, and blister. (Doc. 83-7 at 3; Doc. 83-8 at 2).[9]

## IV.    Arguments & Analysis

The Eighth Amendment to the United States Constitution states: " 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' " *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 n.9 (11th Cir. 2009) (quoting U.S. Const. amend. VIII). "The Eighth Amendment's prohibition against cruel and unusual punishment, applicable to the State of [Alabama] through the Due Process Clause of the Fourteenth Amendment, prohibits the unnecessary and wanton infliction of pain. In the prison context,…[t]he Eighth Amendment can give rise to claims

---

[8] Johnson's unsworn declaration is in substantial compliance with 28 U.S.C. § 1746 and may therefore be considered as evidence on summary judgment.

[9] Both Defendants also aver that, even if Shropshire had shown them his injured foot, they would have assumed he was obtaining medical care through the standard procedure, which is to fill out a medical request slip. (*See* Docs. 83-7 & 83-8). However, both also admit that they could have contacted a medical care provider directly if it was "an emergency or some kind of distress" and that they have done this "many times" before. (*See id.*).

challenging…the excessive use of force[] and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (internal citations and quotations omitted).

In this action, Shropshire claims deprivation of his Eighth Amendment constitutional rights by the Defendants in violation of 42 U.S.C. § 1983.[10] His remaining claims, which are the subject of the present motion for summary judgment, are:

1. Defendants Toney and Johnson both exhibited deliberate indifference to Shropshire's serious medical need by, respectively, failing to and delaying getting him medical treatment for his injured foot.

2. Johnson utilized unconstitutionally excessive force in violation of the Eight Amendment when she struck Shropshire on his swollen, blistered foot.[11]

---

[10]

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983.

[11] Shropshire expressly states that he is suing the Defendants "in their individual capacity" for monetary damages only. (Doc. 21 at 7). However, even if Shropshire were asserting claims against the Defendants in their official capacities as officers of the Alabama Department of Corrections, such claims are barred by sovereign immunity under the Eleventh Amendment. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This

## A. Deliberate Indifference to Serious Medical Need

"[A] prison official's 'deliberate indifference to [the] serious medical needs of [a] prisoner[] constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment.' " *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quotation marks and citation omitted)). " 'However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." ' " *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted)).

The Eleventh Circuit

> ha[s] repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir.1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. *See Harris v. Coweta County*, 21 F.3d 388, 393–94 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537–39 (11th Cir. 1990).

---

jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are []protected by the [Eleventh A]mendment." (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))). In addition, "a state agency[] and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable..." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)).

*McElligott*, 182 F.3d at 1255.

"To prevail on a claim of deliberate indifference to serious medical need …,[] a plaintiff must show: '(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Youmans v. Gagnon,* 626 F.3d 557, 563 (11th Cir. 2010) (quoting *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306–07 (11th Cir. 2009)). This analysis contains both an objective and a subjective component. *See Thomas v. Bryant,* 614 F.3d 1288, 1304 (11th Cir. 2010). A plaintiff must first show an objectively serious medical need that, if unattended, posed a substantial risk of serious harm, and that the official's response to that need was objectively insufficient. *See Bingham v. Thomas,* 654 F.3d 1171, 1175–76 (11th Cir. 2011). Second, the plaintiff must establish that the official acted with deliberate indifference, *i.e.,* the official subjectively knew of and disregarded the risk of serious harm, and acted with more than mere negligence. *See id.; Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000).

First, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Youmans,* 626 F.3d at 564 (quoting *Mann,* 588 F.3d at 1307). "In general, serious medical needs are those 'requiring immediate medical attention.' " *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1190 (11th Cir. 1994)).

Second, to prove "deliberate indifference" to a serious medical need, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Townsend v. Jefferson Cnty.,* 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original) (quoting *Bozeman v. Orum,* 422 F.3d 1265, 1272 (11th Cir. 2005)).

*Gilmore v. Hodges*, 738 F.3d 266, 273-74 (11th Cir. 2013) (ellipsis added).[12]

─────────────

[12] *Gilmore* involved the deliberate indifference claims of a pretrial detainee, rather than a prisoner. "When brought by convicted prisoners, these claims proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment. Pretrial detainees, however, must

"The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute "an unnecessary and wanton infliction of pain." ' " *Farrow*, 320 F.3d at 1243 (quoting *Estelle*, 429 U.S. at 105-06). *See also Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1308 (11th Cir. 2009) ("While the deputies may have made an error in judgment, mere negligence or a mistake in judgment does not rise to the level of deliberate indifference. Plaintiffs' showing that harm resulted, without more, cannot carry the burden required for deliberate indifference."). "The meaning of 'more than gross negligence' is not self-evident but past decisions have developed the concept. In cases [such as Shropshire's] that turn on the delay in providing medical care, rather than the type of medical care provided…[w]here the prisoner has suffered increased physical injury due to the delay, [the Eleventh Circuit] ha[s] consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007).

---

proceed under the Due Process Clause of the Fourteenth Amendment." *Gilmore*, 738 F.3d at 271 (citing *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997)). "[H]owever, the minimum standard for providing medical care to a pretrial detainee is identical to the minimum standard required by the Eighth Amendment for a convicted prisoner, and thus [a court] analyze[s] the claim under the decisional law of both amendments." *Id.* (citing *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007)). *See also, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." (internal citations omitted)).

The Defendants concede that "Shropshire has cleared the first hurdle, the 'objective' prong[,]" as "[h]e has sufficiently established that his foot injury turned out to be, indeed a serious medical condition that needed expedited care."[13] (Doc. 84 at 4). Moreover, though denying that Shropshire ever showed them his injured foot or requested medical attention, *see* n.7, *supra*, the Defendants concede that, "[b]ased on the appropriate Rule 56 standard of review, the Court should assume Toney and Johnson were aware of Shropshire's injury with the following caveat: They were aware of his injury only to the extent that Shropshire is able to testify when each Defendants saw his foot, how the foot looked when they saw it, and what he told them about it." (Doc. 90 at 1-2 (footnote omitted)).

However, the Defendants argue that they are due summary judgment on Shropshire's "deliberate indifference" claims because 1) there is no genuine issue of material fact that the Defendants "did not subjectively appreciate [Shropshire]'s need for immediate medical care and could have reasonably

---

[13] The record evidence also supports the determination that Shropshire's foot injury, constitutes a serious medical need, as the injury indisputably worsened over time when left untreated. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition.*" (emphasis added) (internal citations and quotation omitted)); *Youmans v. Gagnon*, 626 F.3d 557, 564 n.8 (11th Cir. 2010) ("Serious medical need might alternatively be established where the condition worsens due to a delay." (citing *Mann*, 588 F.3d at 1307)). *Cf. Farrow*, 320 F.3d at 1243 & n.14 (citing, *inter alia*, cases involving foot or leg injuries as precedent recognizing "a range of medical needs that are sufficiently serious to constitute 'serious medical needs' for purposes of the Eighth Amendment…").

assumed the injury was being handled through the customary procedures[,]" and

2) the Defendants are entitled to qualified immunity on these claims. (Doc. 83 at

10).

> Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. *See Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Amnesty Int'l, USA v. Battle,* 559 F.3d 1170, 1184 (11th Cir. 2009). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.' " *Lee[ v. Ferraro],* 284 F.3d [1188,] 1194 [(11th Cir. 2002) ](citation omitted) (quoting *Willingham v. Loughnan,* 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity is a defense not only from liability, but also from suit… *See id.*

> "Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Terrell v. Smith,* 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting *Lee,* 284 F.3d at 1194). Once the official has done so, the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson,* 555 U.S. at 232, 129 S. Ct. 808…The Supreme Court recently has made it clear that [courts] need not employ a rigid two-step procedure, but rather may exercise [their] discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236, 129 S. Ct. 808.

*Gilmore*, 738 F.3d at 272-73.

The record evidence amply supports the determination that both

Defendants were acting within the scope of their discretionary authority as

prison officials at the time of the wrongful acts giving rise to Shropshire's claims of deliberate indifference, and Shropshire offers no evidence or argument to dispute this. Accordingly, the burden shifts to Shropshire to show, via the two-pronged analysis discussed above, why the Defendants are not due qualified immunity on his claims for deliberate indifference to a serious medical need.

"The inquiry whether a federal right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) (internal quotation marks omitted  While a plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario, 'existing precedent must have placed the statutory or constitutional question beyond debate.' " *Morris v. Town of Lexington Alabama*, 748 F.3d 1316, 1322 (11th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).

"A constitutional violation may be clearly established either by similar prior precedent, or in rare cases of 'obvious clarity.' With either method, the touchstone is whether the right would be apparent to a reasonable officer." *Gilmore*, 738 F.3d at 277. *See also Loftus*, 690 F.3d at 1204 ('The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable state official that his conduct was unlawful in the situation he confronted." (internal citation and quotations omitted)). "Under the first approach, [a court] look[s] only to binding

precedent—holdings of cases drawn from the United States Supreme Court, [the Eleventh Circuit], or the highest court of the state where the events took place. Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Gilmore*, 738 F.3d at 277 (citation and quotation omitted)

Shropshire's response brief does not cite a materially similar case that he argues would have put the Defendants sufficiently on notice that their actions constituted deliberate indifference. Shropshire instead attempts to factually distinguish the cases cited by Defendants while citing to broader general principals regarding deliberate indifference. Thus, Shropshire appears to have chosen to argue that this is a case of "obvious clarity."

> Obvious clarity cases are rare and present a narrow exception to the general rule of qualified immunity. These obvious clarity cases take two forms. First, a broad statement of legal principle announced in case law may be sufficient if it establishes the law with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted. Alternatively, obvious clarity is recognized if the conduct is so bad that case law is not needed to establish that the conduct cannot be lawful… [T]he second obvious clarity exception is relevant only when conduct is so egregious that no prior case law is needed to put a reasonable officer on notice of its unconstitutionality.

*Id.* at 279.

The Eleventh Circuit "has often been reluctant to reject qualified immunity for deliberate indifference to medical need claims that 'are highly fact-

specific and involve an array of circumstances pertinent to just what kind of notice is imputed to a government official and to the constitutional adequacy of what was done to help and when.' 'Most cases in which deliberate indifference is asserted are far from obvious violations of the Constitution.' " *Id.* at 280 (quoting *Bozeman v. Orum,* 422 F.3d 1265, 1274 (11th Cir. 2005)) (internal citation omitted).

The undersigned is not convinced that that any deliberate indifference by the Defendants to Shropshire's foot injury presents a "rare" case of "obvious clarity" that they were violating his constitutional rights. The undisputed record evidence indicates that the standard procedure for Atmore Work Release Center inmates to obtain medical care was to fill out and submit a request slip. It is also undisputed that the prison medical services provider, rather than prison officials such as the Defendants, were responsible for collecting and processing those request slips. Shropshire was obviously aware of the request-slip process, as he testifies that he utilized this method three times in an attempt to obtain care for his foot. He does not claim that the Defendants impeded his ability to submit request slips once his foot began to swell,[14] nor has he presented evidence that either Defendant was aware that he was not getting a response to his slips from the prison medical service provider.

---

[14] Shropshire does allege that Johnson denied him permission to go get his foot checked on July 4, 2010. However, at this time Shropshire's foot was experiencing only an irritated, burning sensation, and Shropshire admits that neither he nor Johnson had any particular reason for concern at the time regarding his foot getting wet.

In sum, the undersigned finds persuasive the Defendants' argument that, under the specific facts of this case, they were reasonably entitled to rely on a belief that Shropshire was pursuing and would obtain medical aid through the normal prison channels. *Cf. Clark-Murphy v. Foreback*, 439 F.3d 280, 287 (6th Cir. 2006) ("Captain Dyer and Sergeant Wakefield assisted Clark after he collapsed outside the mess hall on June 29. Each defendant's involvement in Clark's care ended after the two of them transferred him to Lauters' unit later that day. ***While they each perceived that Clark needed psychological care, they had no reason to expect that Lauters or any of the other defendants charged with Clark's care would fail to secure that help***... Clark-Murphy has not produced evidence indicating or even suggesting that these defendants had any reason to think Clark was not receiving the psychological treatment he needed after June 29..." (emphasis added)); Robbins v. Black, 351 F. App'x 58, 63 (6th Cir. 2009) (*per curiam*) ("Non-medical staff are entitled to assume that members of the medical staff are performing their duties properly unless they have reason to know otherwise."). Because Shropshire has failed to meet his burden of demonstrating that the Defendants are not entitled to qualified immunity on his deliberate indifference claims, the undersigned finds that the Defendants' motion for summary judgment is due to be **GRANTED** as to these claims.

## B.   Excessive Force

As with Eighth Amendment "deliberate indifference" claims, claims of Eighth Amendment violations through the excessive use of force "require[] a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). However, unlike "deliberate indifference" claims, "[e]xcessive-force claims…require a showing of a heightened mental state—that the defendants applied force 'maliciously and sadistically for the very purpose of causing harm.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)).

Shropshire claims that Johnson used unconstitutionally excessive force when she hit his injured foot in the prison kitchen on July 6, 2010. Johnson concedes that "this may be the most difficult claim to prevail on in the summary judgment context and a trial may be necessary…" (Doc. 84 at 8). However, Johnson suggest that Shropshire's "excessive force" claim may be disposed of on summary judgment because "the record is so divergent from" his claim. (*Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")). Specifically, Johnson notes that no eyewitnesses corroborate Shropshire's claim that Johnson

struck him, that he did not report the incident to medical personnel, and that none of the medical providers saw any evidence of such a battery.

However, "[i]n *Scott,* the Supreme Court did not tinker with the summary judgment standard, for it merely held 'that when documentary evidence "blatantly contradict[s]" a plaintiff's account "so that no reasonable jury could believe it," a court should not credit the plaintiff's version on summary judgment.' " *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (quoting *Witt v. W. Va. State Police*, 633 F.3d 272, 276–77 (4th Cir. 2011) (alteration in original) (quoting *Scott*, 550 U.S. at 380)). The Court in *Scott* found that a party's "[v]ersion of events [wa]s so utterly discredited by the record that no reasonable jury could have believed him" because a video of the events in question "quite clearly contradict[ed] the version of the story told by" that party. 550 U.S. at 378, 380. *See also Morton*, 707 F.3d at 1284 ("Thus, where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible.").

Here, no video of the alleged assault by Johnson has been presented. Instead, Johnson simply asks the undersigned to disregard Shropshire's sworn testimony because no other record evidence supports it. While Shropshire's sworn statements that Johnson struck his foot may be self-serving, "that alone does not permit [a court] to disregard them at the summary judgment stage. As w[as] stated in *Price v. Time, Inc.,* 416 F.3d 1327, 1345 (11th Cir. 2005), '[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn

testimony even though it is self-serving.' " *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). The fact that Johnson has presented the sworn statements of herself and others that contradict Shropshire's claim that she assaulted him "presents a classic swearing match, which is the stuff of which jury trials are made." *Id.* "Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.' " *Id.* at 1252 (quoting *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)).

Moreover, Shropshire's testimony is not discredited simply because the medical record might not indicate a battery occurred. *Cf. Morton*, 707 F.3d at 1284 ("Under *Scott v. Harris,* Kirkwood argues, we can reject Morton's testimony wholesale, even at the summary judgment stage. 550 U.S. at 380, 127 S. Ct. 1769. In so arguing, Kirkwood offers four pieces of forensic evidence that, he contends, utterly discredit Morton's version of events… Kirkwood's argument falters because Morton's testimony may reasonably be harmonized with the circumstantial evidence that the car was moving."). Shropshire claims only that Johnson's blow to his foot caused him additional pain and popped some blisters. He has never claimed that the blow broke any bones, cut his skin, or caused any major or lasting damage. As such, it is not unusual that Shropshire would not have mentioned the battery to any of the medical personnel, nor that the medical personnel, faced with Shropshire's swollen and infected foot, would have attributed any popped blisters to a battery.

Johnson also argues that Shropshire has "failed to prove any malicious intent behind the alleged striking of his foot, nor has he proven that he suffered anything more than a de mininis [sic] injury from the alleged assault." (Doc. 84 at 9). )). The Supreme Court has made clear that for "excessive force" claims, "[t]he 'core judicial inquiry[]'…[i]s not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*per curiam*) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Thus, "the notion that 'significant injury' is a threshold requirement for stating an excessive force claim" has been rejected. *Id.   See also Thomas*, 614 F.3d at 1304 ("…[I]n the excessive-force context, contemporary standards of decency may be violated even where no significant injury is evident."). " 'When prison officials maliciously and sadistically use force to cause harm … contemporary standards of decency always are violated ... whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9).

> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. The extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not "every

malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Id.* at 37-38 (some citations and quotations omitted).

"In determining whether force was applied maliciously and sadistically for the very purpose of causing harm, courts look to five factors: '(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.' " *Williams v. Scott*, 433 F. App'x 801, 804 (11th Cir. 2011) (*per curiam*) (quoting *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21(1986)) (internal quotation marks omitted)).

Viewing the facts in the light most favorable to Shropshire and applying the pertinent factors to those facts, the undersigned finds that Shropshire has presented sufficient evidence creating a genuine issue of material fact as to whether Johnson's strike to his foot was applied maliciously and sadistically for the very purpose of causing harm. As to the extent of injury, while Shropshire has claimed no lasting injury, he has testified that the blow to his foot was sufficient to rupture blisters and exacerbate the pain from his already-injured foot. Second, no record evidence indicates there was any threat to the safety of staff and inmates at the time.

As for the need for the application of any such force, Johnson posits that she might have hit Shropshire's foot because she "thought that Shropshire was malingering and trying to get out of his kitchen duties" and was simply trying to "motivate" him to get to work. (Doc. 90 at 10). Johnson, however, concedes that "[h]itting someone on the foot (whom you believe is malingering) once with the rubber end of a squeegee may not be the best way to motivate inmates to work" (*id.*), and the record indicates a genuine issue of material fact as to whether there was any need to strike Shropshire's. Malice could be inferred because record evidence indicates that Johnson struck Shropshire on his injured foot after overhearing Shropshire and Stonewall discussing his injury, at which time Shropshire's swollen and blistered foot was visible, and after Shropshire had repeatedly attempted to be excused from his duties due to his foot. Even if there is arguably a need to strike Shropshire's foot to motivate him to get back to

work, an issue of fact as to the relationship between this need and the amount of force use. It is not difficult to argue that a "motivational tap" shouldn't be forceful enough to rupture blisters.

In sum, genuine issues of material fact remain as to whether Johnson's blow to Shropshire's foot occurred at all and, if it did, whether it was done maliciously and sadistically to cause Shropshire harm. As such, the undersigned finds that the Defendants' motion for summary judgment is due to be **DENIED** as to Shropshire's claim of excessive force against Johnson.[15]

## V.  Conclusion

In accordance with the above-stated reasoning, the undersigned Magistrate Judge **RECOMMENDS** that the Defendants' second Motion for Summary Judgment under Federal Rule of Civil Procedure 56 (Doc. 83) be **DENIED** as to Shropshire's claim against Defendant Johnson for use of excessive force and that it be **GRANTED** as to his claims against the Defendants for deliberate indifference to a serious medical need.[16]

Additionally, as the undersigned has found that the motion for summary

---

[15] Johnson, correctly, does not argue that she is entitled to qualified immunity on Shropshire's "excessive force" claim. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) ("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.").

[16] Thus, should the district judge adopt this recommendation, no claims would remain to be tried against Defendant Toney.

judgment is adequately disposed of on the parties' briefs and the record evidence, the undersigned further **RECOMMENDS** that the Defendants' motion for oral argument (Doc. 91) be **DENIED**.

## VI.    Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 16th day of September 2014.

 */s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE**
**JUDGE**