# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNIE SHROPSHIRE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 10-00470-CB-N |
| DEBORAH TONEY and | ) | |
| CHANDRA JOHNSON, | ) | |
| | ) | |
| Defendants, | | |

## AMENDED ORDER[1]

This matter is before the Court on the Magistrate Judge's Report and Recommendation (R & R) (Doc. 92), Plaintiff's objections thereto (Doc. 93) and Defendants' reply (Doc. 95). After due consideration of all issues, the Court agrees with the Magistrate Judge's conclusion that the Defendants are entitled to qualified immunity on Plaintiff's claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs.

**Background[2]**

Plaintiff Donnie Shropshire, an inmate at the Atmore Work Release Center, an Alabama Department of Corrections (ADOC) facility, was injured after another inmate accidentally splashed mop water on his right foot. At the time, Shropshire did not know of any particular problem, other than his foot was drenched. He asked Sergeant Chandra Johnson, whom he was assisting at the time, for permission to

---

[1] This Amended Order corrects typographical errors on page 3 of the original Order.
[2] The following is a synopsis of the facts and procedural background of this case, which are set out more fully in the Report and Recommendation.

change his shoe. Johnson denied the request because she needed Shropshire's help. Shropshire took off his sock and put his wet shoe back on. Later that day, he told Johnson his foot was burning and felt irritated. That afternoon Shropshire took a shower and saw that his right foot was starting to turn red. The foot was also itchy and burning and later began to swell.

The next morning Shropshire met Warden Deborah Toney as she arrived for work. He told her about his foot getting wet, and showed her his injured foot. At this point, his foot was sweating and swollen and was "getting ready" to develop a blister. Shropshire told Toney he was in pain. Toney said there was nothing at the facility that would cause that and went about her business. Shropshire may or may not have explicitly requested medical attention from Toney. Shortly thereafter, Shropshire filled out a medical request form.

Inmates request medical care by filling out a medical care request slip and placing them in a box. Nurses visit Atmore Work Release daily and review the medical request slips. ADOC staff has no role in receiving or assessing these requests.

One day later (two days after the incident), Shropshire was called to the kitchen to do some cleaning. When he arrived, Shropshire told the steward, Kathy Stonewall, that he could not do cleaning duties because of his foot. Shropshire told her what had happened. According to Stonewall, the foot looked "awful", "nasty", had blisters that had popped, and was "swollen" and "puss[ie]". Shropshire was having difficulty walking and was wearing shower slides. Johnson was standing nearby and appeared to be listening. Stonewall told Shropshire to go lie down.

Johnson grabbed a squeegee and hit Shropshire's swollen foot. Shropshire said nothing to Johnson at any time during this encounter.

The next day (three days after the incident) Shropshire submitted another medical request form stating that his foot was numb, swollen, and in pain. That afternoon, blood and puss were running through his sock. Another inmate took him to the shift office in a wheelchair. Johnson, who was in the office, directed another officer to take Shropshire to another facility for medical attention.

According to the doctor who treated Shropshire, his injury was consistent with a chemical burn. In addition, Shropshire had developed a staph infection in his foot. Both injuries were serious, could cause further damage if not treated and, in the case of the staph infection, could result in death or loss of the foot.

Shropshire asserts claims against Johnson and Toney under 42 U.S.C. § 1983 for violation of her constitutional rights.[3] Specifically, Shropshire claims that Defendants' refusal to provide medical treatment for his foot amounted to deliberate indifference to a serious medical need. In addition, Shropshire assets that Johnson used unconstitutionally excessive force by hitting his injured foot. Defendants filed a motion for summary judgment on all claims.

**The R & R and Plaintiff's Objections**

The Magistrate Judge has recommended that summary judgment be: (1) granted in favor of both Defendants on the deliberate indifference claim but (2) denied as to the excessive force claim against Defendant Johnson. Shropshire's objection is directed at the former. At issue is the Magistrate Judge's conclusion that

---

[3] As detailed in the Report and Recommendation (Doc. 32 at 2-4), this litigation has a lengthy history. The claims set forth above are the sole remaining claims.

the Defendants are entitled to qualified immunity on the deliberate indifference claim.

**Discussion**

The Report and Recommendation sets out the applicable law, which will be restated here only to the extent necessary to address Shropshire's objections. First, the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1996) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Deliberate indifference involves both an objective component (i.e., a serious medical need) and a subjective component (i.e., deliberate indifference to that need). *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). To satisfy the subjective element a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Id.* (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). However, a prison official may be immune from liability for money damages based on the doctrine of qualified immunity even though his conduct amounted to a constitutional violation under the foregoing standards.

The Eleventh Circuit has explained qualified immunity as follows:

> Qualified immunity is a guarantee of fair warning. Under the doctrine of qualified immunity, a government official sued for damages for injuries arising out of the performance of discretionary functions must be "shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " As the Supreme Court has explained, "qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that

4

> a reasonable official would understand that what he is doing violates that right.' " "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent."

*McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999) (internal citations omitted). The Magistrate Judge found the Defendants were entitled to qualified immunity on the deliberate indifference claim because the law was not clearly established. Shropshire takes issue with this conclusion.

For our purposes, a right may be clearly established in a manner sufficient to provide fair warning in one of two ways. First, Shropshire "may establish that the right was clearly established by pointing to a 'materially similar case'" decided by the Supreme Court, the Eleventh Circuit, or the Alabama supreme court. *Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir. 2012). A materially similar case is one that "is [not] fairly distinguishable" from the circumstances in this case. *Id.* The Magistrate Judge noted that Shropshire had failed to point to any materially similar case that would have put Defendants on notice that their conduct amounted to deliberate indifference. Shropshire insists that his summary judgment response relied on similar prior precedent, but he has failed to articulate—either in his summary judgment response or in his objection--any material factual similarity between the cases cited and the case at hand.

Alternatively, Shropshire may be able to demonstrate that the law was clearly established by pointing to "broad statements of principle in case law are not tied to particularized facts . . . [that] clearly establish law applicable in the future to different sets of detailed facts.'" *Id.* (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1351

5

(11th Cir. 2002)). This method is referred to as "obvious clarity" because "the principle must be established with 'obvious clarity' by the case law so that '*every objectively reasonable government official facing the circumstances would know that the official's conduct [ ] violate[d] federal law when the official acted*." *Id.* (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).[4] This is a difficult hurdle in a deliberate indifference case, most of which "are far from obvious violations of the constitution." *Bozeman* 422 F.3d at 1275. "Obvious clarity cases are 'rare,' and present a 'narrow exception' to the general rule of qualified immunity." *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013) (internal citations omitted). Furthermore, they are rarer still in deliberate indifference cases which 'are highly fact-specific... Most cases in which deliberate indifference is asserted are far from obvious violations of the Constitution." *Id.* at 280.

The broad statement of principle here is this: A government official acts with deliberate indifference by intentionally delaying medical care to an inmate knowing that the inmate has a serious medical condition. The question is whether every reasonable official in Johnson's position or in Toney's position would have known that failure to act immediately would amount to deliberate indifference. Before examining that question, it is helpful to consider the types of actions that have amounted to "obvious violations" under the deliberate indifference standard. In

---

[4] There is a second "obvious clarity" category, a very narrow exception, in which "'the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law.'" *Id.* at 1257 (quoting *Vinyard*, 311 F.3d at 1350 (emphasis omitted)). Shropshire does not contend that this type of "obvious clarity" applies.

*Bozeman*, 422 F.3d at 1275-76, the Eleventh Circuit held qualified immunity did not protect jail guards who did not administer treatment or summon help for 14 minutes for inmate they knew was unconscious and not breathing. In *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), jail guards sprayed an inmate with pepper spray then refused to allow appropriate decontamination procedures resulting in pain, conjunctivitis and respiratory problems to the inmate. In both *McElligott v. Foley*, *supra*, a case involving six months of cursory medical treatment for an inmate's seriously deteriorating condition, and *Lancaster v. Monroe County*, 116 F3d 1419 (11th Cir. 1997), a case involving the death of an inmate due to acute alcohol withdrawal, the appellate court found the law to be clearly established by pre-existing case law involving similar circumstances.

      In this case, Defendant Toney was confronted by an inmate with a red, swollen foot that had not yet developed blisters and was informed that the condition had occurred after his foot had been drenched by mop water the previous day. Would every reasonable prison official have known that failure to obtain immediate medical care for Shropshire result in a constitutional violation? The answer is no. The seriousness of the injury was not apparent at that point. The request for medical attention, if made, was outside the established channels for seeking medical treatment. Unlike the situation in *Danley*, Toney did not know that a chemical was the source of the injury. Unlike the jail guards in *Bozeman*, Toney was not presented with an injury that appeared to be life-threatening or even serious. Finally, unlike *Lancaster and McElligott*, there was no similar case law to

7

provide guidance. In sum, this is not an obvious case, and Toney is entitled to qualified immunity.

The issue is more complex with respect to Defendant Johnson. She knew how and when the injury occurred and was, apparently, aware of its progression. According to Shropshire, Johnson was listening when he told Stonewall he could not work because of his foot, and Johnson saw his red, swollen, pussie, nasty-looking foot. But Shropshire did not ask for help and never even spoke directly to Johnson. Would every reasonable officer in Johnson's place have known, despite the lack of request, that failure to provide immediate medical attention for Shropshire would result in a constitutional violation? While the answer here is less emphatic than it was with Toney, it is still no. Unlike the inmate in *Bozeman*, Shropshire could have asked for help but did not. Unlike the inmate in *Danley*, Shropshire did not ask for help from this Defendant. Moreover, Shropshire had another avenue for obtaining medical attention—the sick call system. A reasonable official in Johnson's position—to whom no request for medical assistance was made—could reasonably assume that Johnson would obtain medical attention through the sick call system.

Finally, while the Court agrees with the Magistrate Judge's conclusion, one statement in the Report and Recommendation bears further clarification. The concluding paragraph of the qualified immunity discussion states, in part: "In sum the undersigned finds persuasive the Defendants' argument that, under the specific facts of this case, they were reasonably entitled to rely on a belief that Shropshire was pursuing and would obtain medical aid through normal prison channels." (R & R at 26, Doc. 92.) Shropshire objects to this conclusion because, as he points out,

there is no evidence that either Defendant had such a belief. (Pl.'s Objection 9, Doc. 93.) The question, though, is whether every reasonable official with all of the knowledge Defendants had (including the *existence* of the sick call system) would have felt compelled to obtain immediate medical treatment for Shropshire. Defendants' reliance is irrelevant. A reasonable official in either Defendant's position could have taken that system into account in deciding whether to act. Stated differently, in light of the sick call system and the apparent minor injury (in Toney's case) or the lack of any specific request for medical assistance (in Johnson's case), the law was not so obviously clear that every reasonable prison official in their respective circumstances would have known that their conduct amounted to deliberate indifference.

**Conclusion**

For the foregoing reasons, the Court **overrules** the Plaintiff's objections and **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 92). Defendants' motion for summary judgment (Doc. 83) is, therefore, **DENIED** as to Shropshire's excessive force claim against Defendant Johnson, and **GRANTED** as to Shropshire's claim against both Defendants for deliberate indifference to serious medical need. The Defendant's motion for oral argument (Doc. 91) is **DENIED**.

**DONE** and **ORDERED** this the 17th day of November *nunc pro tunc* the 10th day of November, 2014.

> **s/***Charles R. Butler, Jr.*
> **Senior United States District Judge**